JUDGE'S COPY

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LAQUITA MURRAY, by and through her father
and natural guardian, DAVID L. JONES

    Plaintiffs

    v.         NO. 1:CV-01-00255

PENNSYLVANIA DEPARTMENT OF
CORRECTIONS; *et al.,*       (KANE, J.)

    Defendants

FILED
HARRISBURG
MAY 0 8 2001
MARY E. D'ANDREA, CLERK
Per_____ DEPUTY CLERK

BRIEF IN SUPPORT OF THE MOTION TO DISMISS FILED ON BEHALF OF THE PENNSYLVANIA DEPARTMENT OF CORRECTIONS, STATE CORRECTIONAL INSTITUTION AT FRACKVILLE, MARTIN F. HORN AND JOSEPH W. CHESNEY

I. STATEMENT OF THE CASE

  A. Identity of the Parties and Nature of the Action

Plaintiffs are Liquita Murray, a young lady identified in the complaint as being ten years old (and therefore approximately eight years at the time of the last incident alleged), and David L. Jones, who identifies himself as Ms. Murray's father and natural guardian. The plaintiffs allege that the defendants violated their civil rights when Ms. Murray was molested in an institution visiting room. The defendants are: John Odell Mims; Georgette Mims, Ms. Murray's mother; the Pennsylvania Department of Corrections; State Correctional Institution at Frackville; Martin F. Horn

and five "John Does," all identified as employees of the State Correctional Institution at Frackville. The defendants who have moved to dismiss the complaint are: the Pennsylvania Department of Corrections; State Correctional Institution at Frackville; Martin F. Horn, the former secretary of corrections and presently, the secretary of administration, and Superintendent Joseph W. Chesney (who is identified in the complaint as "John Doe #1, Superintendent - SCI Frackville") (the Commonwealth defendants).

B. Procedural History

The complaint was filed on February 8, 2001, and it was served by mail on the department, the institution and Secretary Horn on February 22, 2001. On March 12, 2001, the department, the institution, Secretary Horn and Superintendent Chesney waived service. On April 24, 2001, the four served defendants filed a motion to dismiss. This brief in filed in support of that motion.

C. Statement of Relevant Facts

The complaint alleges that beginning April 4, 1998, Georgette Mims would bring her daughter, Ms. Murray, with her when she went to the correctional institution to visit John Mims. Complaint, ¶26. This allegedly occurred approximately seventeen times over the next ten months. *Id.* During some of these visits John Mims allegedly molested Ms. Murray. The allegations against the moving defendants is that

-2-

they "knew, suspected, and . . . should have known that allowing defendant John Mims to have extended physical contact with Laquita Murray . . . substantially increased the risk she would suffer repeated sexual assault, molestation, and rape. . . ." Complaint, ¶50.

II. Questions Presented

1. Are the department, the institution, Secretary Horn and Superintendent Chesney (to the extent he is sued in his official capacity) immune from suit in Federal Court under the Eleventh Amendment?

2. Does the applicable statute of limitations bar all claims regarding incidents that occurred more than two years before the date this action was filed?

3. Should Plaintiff David L. Jones, who does not allege that any civil right he enjoys was violated by any Commonwealth defendant, be dismissed as a party?

4. Should the moving defendants be dismissed as at most, the claim against them is one of negligence and does not satisfy the theory of "state created danger?

III. ARGUMENT

A. THE MOTION TO DISMISS STANDARD

When deciding a motion to dismiss for failure to state a cognizable claim, the Court must accept plaintiff's factual claims and draw from them all reasonable inferences favorable to plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 237 (1974); *Jenkins*

*v. McKeithen*, 395 U.S. 411, 421-22 (1969); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *D.P. Enterprises, Inc. v. Bucks County Community College*, 725 F.2d 943, 944 (3d Cir. 1984); *Truhe v. Rapell*, 641 F.Supp. 57 (M.D. Pa. 1985). Therefore, the Court should not dismiss a complaint for failure to state a claim unless it is convinced beyond reasonable doubt that the plaintiff can prove no set of facts to support a claim which would permit recovery. *Conley, supra*; *Hooten v. Pennsylvania College of Optometry*, 601 F.Supp. 887, 891 (W.D. Pa. 1985)(*citing, Columbia Picture Industries, Inc. v. Redd Horne, Inc.*, 749 F.2d 154, 161 (3d Cir. 1984)).

A. THE ELEVENTH AMENDMENT BARS THE CLAIMS AGAINST THE DEPARTMENT, THE INSTITUTION, SECRETARY HORN AS WELL AS THE CLAIM AGAINST SUPERINTENDENT CHESNEY IN HIS OFFICIAL CAPACITY.

The Eleventh Amendment to the Constitution exemplifies a broad rule of state sovereign immunity. As the Supreme Court has explained, that rule "has two parts: first, that each State is a sovereign entity in our federal system; and second, that '[i]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent.'" *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996), *quoting Hans v. Louisiana*, 134 U.S. 1, 13 (1890). For over a century the Court has "reaffirmed that federal jurisdiction over suits against unconsenting States 'was not contemplated by the Constitution when establishing the judicial power of the

United States.'" *Seminole Tribe*, 517 U.S. at 54, *quoting Hans*, 134 U.S. at 15. A federal suit against an unconsenting State or its alter ego is barred regardless of the relief sought. *Seminole Tribe*, 517 U.S. at 58 ("we have often made it clear that the relief sought by a plaintiff ... is irrelevant to the question whether the suit is barred by the Eleventh Amendment").

As an agency of the Commonwealth government, the department, its institutions and its employees and officials partake of Pennsylvania's Eleventh Amendment immunity. *See* Pa. Stat. Ann., tit. 71 § 61 (Purdon 1990) (establishing the Department of Corrections as part of the executive department of the Commonwealth). The Eleventh Amendment bars this lawsuit against all moving defendants (except Superintendent Chesney, to the extent he is being sued in his individual capacity), *unless* Pennsylvania has lost its immunity.

That immunity can be lost in only two ways: 1) if the Commonwealth itself waives it, or 2) if Congress, pursuant to a valid exercise of power, abrogates it. *College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd.*, 119 S.Ct. 2219, 2223 (1999). In this case, there is no question of waiver — Pennsylvania by statute has expressly declined to waive its Eleventh Amendment immunity, *see* Pa. Stat. Ann., tit. 42 § 8521(b) (Purdon 1998). Nor has Congress abrogated that immunity in civil rights cases filed under Section 1983. *Pennhurst State School and Hospital v. Halderman*,

456 U.S. 89, 99-100 (1984); *Alabama v. Pugh*, 438 U.S. 781 (1978). Furthermore, neither a state nor its officials acting in their official capacities are "persons" under §1983. *Will v. Michigan*, 491 U.S. 58 (1989). Therefore all claims made against the department, one of its institutions, Secretary Horn must be dismissed. In addition, the claim against Superintendent Chesney in his official capacity must be dismissed.

B. THE APPLICABLE STATUTE OF LIMITATIONS BARS ALL CLAIMS REGARDING INCIDENTS THAT OCCURRED MORE THAN TWO YEARS BEFORE THE DATE THIS ACTION WAS FILED.

The applicable statute of limitations for actions brought pursuant to 42 U.S.C. § 1983 in Pennsylvania is two years. *See*: *Wilson v. Garcia*, 471 U.S. 261, 277 (1985) (characterizing all Section 1983 actions as analogous to a state-law personal injury action); *Brougher v. University of Pittsburgh*, 882 F.2d 74, 78 (3d Cir. 1985) (Pennsylvania two-year statute of limitations applies to a civil rights case); *Smith v. City of Pittsburgh*, 764 F.2d 188 (3d Cir. 1985) (applying 42 Pa. Cons. Stat. Ann. § 5524 (Purdon Supp.2000) as the applicable statutory provision); 42 Pa.C.S. § 5524 (Purdon Supp.2000).[1] Therefore as this action was not filed until February 8, 2001, any

---

[1] 42 Pa. Cons. Stat. Ann. §5524(2) governs both "[a]n action to recover damages for injuries to the person ... caused by the wrongful act or neglect or unlawful violence or negligence of another," 42 Pa. Cons. Stat. Ann.§5524(2) (Purdon Supp. 2000), and "[a]ny other action or proceeding to recover damages for injury to person or property
(continued...)

incident which occurred more than two years before that date cannot form the basis of a claim and plaintiffs are barred from litigating them now.

As a general rule, asserting the applicable statute of limitations to bar an action is an affirmative defense. Fed.R.Civ.P. 8(c). However, the district court can consider it at the pleading stage if the facts supporting its assertion appear on the face of the complaint. *See, Oshiver v. Levin, Fishbein, Sedran and Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994); *Davis v. Grusemeyer*, 996 F.2d 617, 623 (3d Cir. 1993).[2] Such is the case here. The complaint spells out that the alleged incidents started on or after the April 4, 1998, visit and continued until the February 1999 visit. Any claim regarding a visit before February 8, 1999 is barred.

C. PLAINTIFF DAVID L. JONES DOES NOT ALLEGE THAT ANY CIVIL RIGHT HE ENJOYS WAS VIOLATED BY ANY COMMONWEALTH DEFENDANT AND THEREFORE MUST BE DISMISSED AS A PARTY.

Jones identifies himself as the non-custodial natural parent of Ms. Murray.

---

[1](...continued)
which is founded on negligent, intentional, or otherwise tortious conduct ..." 42 Pa. Cons. Stat. Ann. §4424(7) (Purdon Supp.2000).

[2]The district court may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case. *Oshiver v. Levin, Fishbein, Sedran and Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); *Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3d Cir.1990); 5A Wright & Miller, Federal Practice and Procedure: Civil 2d, § 1357.

Case 1:01-cv-00255-YK    Document 5    Filed 05/08/2001    Page 8 of 13

Complaint, ¶ 5. Beyond this, he does not explain why he has named himself in his own right as a plaintiff and what civil right he believes he has which was violated by any moving defendant. "[I]n any § 1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). While there is no doubt that Secretary Horn and Superintendent Chesney, as state officials, are "acting under color of state law," Jones fails to satisfy the second prong of this test.

There are a number of cases permitting a parent to pursue a personal claim for loss of companionship of a child as a cognizable liberty interest that logically extends from the liberty interest in custody of their children (even, in some cases an adult emancipated child) when the child has died as a result.[3] However, defendants' attorney knows of no case in which a parent has succeeded on his/her own claim of violation of civil rights where the child has allegedly suffered a violation of his/her civil

---

[3] See, e.g., *Bailey v. County of York*, 768 F.2d 503, 509 n. 7 (3d Cir. 1985); *Bell v. City of Milwaukee*, 746 F.2d 1205, 1242-45, 1251-53 (7th Cir. 1984).

rights but not death.[4] This Court should not extend the law in this area to create this new theory of liability.

> D. THE MOVING DEFENDANTS SHOULD BE DISMISSED AS AT MOST, THE CLAIM IS ONE OF NEGLIGENCE AND DOES NOT SATISFY THE THEORY OF "STATE CREATED DANGER".

In *DeShaney v. Winnebago Co. Dep't of Social Serv.*, 489 U.S. 189, 197, 109 S.Ct. 998, 1004, 103 L.Ed.2d 249 (1989), the Supreme Court considered whether the due process clause of the Fourteenth Amendment imposed upon the state an affirmative duty to protect an individual against private violence where a special relationship exists between the state and the private individual. The Court found that the special relationship which would impose affirmative duties of care and protection on the state existed only in certain limited circumstances, such as when the state takes a person into its custody and holds him there against his will. *Id.* at 199-201, 109 S.Ct. at 1005-06. The Court explained:

> In the substantive due process analysis, it is the State's

---

[4]In Pennsylvania, a claim of loss of consortium is limited to spouses and does not extend to loss of a child's consortium. *See, e.g., Quinn v. City of Pittsburgh*, 243 Pa. 521, 90 A.2d 353 (1914); *Jackson v. Tastykake, Inc.*, 437 Pa.Super. 34, 39, 648 A.2d 1214, 1217 (1994); *Schroeder v. Ear, Nose and Throat Assoc.*, 383 Pa.Super. 440, 557 A.2d 21 (1989), *appeal denied*, 523 Pa. 650, 567 A.2d 653 (1989); *Brower by Brower v. City of Philadelphia*, 124 Pa.Cmwlth. 586, 557 A.2d 48 (1989), *appeal denied*, 525 Pa. 604, 575 A.2d 569 (1990).

affirmative act of restraining the individual's freedom to act on his own behalf--through incarceration, institutionalization, or other similar restraint of personal liberty--which is the "deprivation of liberty" triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.

*Id.* at 200, 109 S.Ct. at 1006 (footnote omitted). The Court in *DeShaney* did not find a due process violation as the harms suffered by the child occurred while he was in the custody of his father, not in the state's custody. *Id.* at 201, 109 S.Ct. at 1006. However, courts have concluded that a custodial relationship is not required if the harm to the plaintiff is the consequence of a state created danger.

Our Court of Appeals has explained the "State-Created Danger" theory in *Kneipp v. Tedder*, 95 F.3d 1199 (3d cir. 1996) as follows:

> In the 1995 case of *Mark v. Borough of Hatboro*, [51 F.3d 1137, 1141 (3d Cir.), *cert. denied*, --- U.S. ----, 116 S.Ct. 165, 133 L.Ed.2d 107 (1995)], we suggested a test for applying the state-created danger theory. We found that cases predicating constitutional liability on a state-created danger theory have four common elements:
> (1) the harm ultimately caused was foreseeable and fairly direct; (2) the state actor acted in willful disregard for the safety of the plaintiff; (3) there existed some relationship between the state and the plaintiff; (4) the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur. 51 F.3d at 1152. We further noted that "[t]he cases where the state-created danger theory was applied were based on discrete, grossly reckless acts committed by the state or

-10-

> state actors using their peculiar positions as state actors, leaving a discrete plaintiff vulnerable to foreseeable injury." *Id.* at 1153. Those courts which have recognized the state-created danger theory have employed a deliberate indifference standard. *Id.* at 1152 (*quoting Johnson v. Dallas Independent School Dist.*, 38 F.3d 198, 201 (5th Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 1361, 131 L.Ed.2d 218 (1995); *Wood*, 879 F.2d at 588; *Cornelius*, 880 F.2d at 350).

*Id.* 95 F.3d at 1208 (footnote omitted). Here, the Commonwealth defendants took no affirmative act to create the danger to Ms. Murray. The entirely independent acts of Ms. Murray's mother, Georgette Mims (*see*, Complaint, ¶ 12) created the potential for danger to Ms. Murray. It is Ms. Mims who affirmatively acted to place Ms. Murray in danger — she dressed Ms. Murray to facilitate the assault and brought her to the institution so that the assault could occur.

In *D.R. by L.R. v. Middle Bucks Area Vo. Tech. School*, 972 F.2d 1364 (3d Cir 1992), a case in which two female students at a public high school alleged that they were physically, verbally and sexually molested by male students in a unisex bathroom and in a darkroom, which were parts of the graphic arts classroom, the court rejected that the argument that the state actors had affirmatively acted to create the danger. This case is much more like *D.R. by L.R.* than *Kneipp*. The state merely owned the venue that others used for their own improper acts; they did not create the danger to Ms Murray (such as separating Ms. Murray from her protector as occurred

-11-

in *Kneipp*).

IV. CONCLUSION

Wherefore, the Court should dismiss this action.

Respectfully submitted,

D. MICHAEL FISHER
Attorney General

By: *[signature]*

FRANCIS R. FILIPI
Senior Deputy Attorney General
Attorney ID# 18630

SUSAN J. FORNEY
Chief Deputy Attorney General

Counsel for defendants
Pennsylvania Department of
Corrections, State Correction
Institution at Frackville, Martin
F. Horn and Joseph W. Chesney

Office of Attorney General
15th Floor, Strawberry Square
Harrisburg PA 17120
717.787.3874 (Direct Dial)
717.772.4526 (Facsimile)
E-Mail: ffilipi@attorneygeneral.gov

Date: May 8, 2001

## CERTIFICATE OF SERVICE

I, FRANCIS R. FILIPI, Senior Deputy Attorney General, hereby certify that on this date I caused to be served a copy of the foregoing Brief in Support of Defendants' Motion to Dismiss by depositing it in the United States Mail, postage prepaid, first class, in Harrisburg, PA, addressed to the following:

Albert J. Michell, Esquire
MICHELL & ASSOCIATES
Suite 580
21 S. Fifth St.
Philadelphia, PA 19106

*Francis R. Filipi*
FRANCIS R. FILIPI
Senior Deputy Attorney General

DATED: May 8, 2001