ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FILED

JUN 2 5 2001

PER _____
HARRISBURG, PA.    DEPUTY CLERK

|  |  |  |
|---|---|---|
| LAQUITA MURRAY, by and through her father | : | |
| and natural guardian, DAVID L. JONES | : | NO.: 1:CV-01-00255 |
| Plaintiffs | : | |
| E. | : | |
|  | : | |
| PENNSYLVANIA DEPARTMENT OF | : | |
| CORRECTIONS | : | (KANE, J.) |
| et al | : | |
| Defendants | : | |
|  | : | |

**PLAINTIFF LAQUITA MURRAY'S F.R.C.P. RULE 56(f)
REQUEST FOR CONTINUANCE AND SUPPORTING AFFIDAVIT OF PRESENT
INABILITY TO OBTAIN FACTS TO OPPOSE SUMMARY JUDGEMENT
<u>MOTION OF DEFENDANT CHESNEY</u>**

Pursuant to Federal Rule of Civil Procedure Rule 56(f) Plaintiff's undersigned

counsel requests this Honorable Court defer consideration of Defendant Chesney's motion

for summary judgment until Plaintiff has been afforded adequate time and opportunity to

engage in the discovery outlined below.  Plaintiff requests a continuance of time to

substantively respond to Defendant Chesney motion so that discovery of the facts can

occur.  To that end, Plaintiff further requests this Honorable Court order counsel for the

Defendants to confer and cooperate in good faith and a timely manner to outline, as per

**FRCP Rule 26(f) and Local Rule 16.3, an agreement for orderly discovery in this matter including the timely production of all the mandatory FRCP Rule 26(a) discovery disclosures outlined below and the production of witnesses for oral examination at times convenient for both counsel and the witnesses.**

This action was filed by minor-Plaintiff, Laquita Murray in February 2001 alleging Defendants' liability for violations of her civil rights during a series of incidents in which she was sexually assaulted and raped in the visitation area of SCI-Frackville on 17 separate occasions when she was taken to see Defendant John Mims by her own mother, Georgette Mims. Defendant Chesney was the superintendent of SCI-Frackville at the time of the sexual assaults.

Defendants, including Defendant Chesney, brought a 12(b)(6) motion to dismiss prior to the deadline for service of an answer to Plaintiff's complaint. Briefing was completed by both parties by June 5th, 2001. Defendant Chesney, prior to the resolution of his 12(b)(6) motion then filed the pending FRCP Rule 56 motion for summary judgment and later, a supporting brief on June 5, 2001. Defendants have not yet answered the averments of Plaintiff's complaint.

Upon the initiative of Plaintiff's counsel and after several attempts to get Defendants' counsel to respond to calls, a telephone FRCP Rule 26(f) discovery conference was held between Plaintiff's counsel and Defendants' counsel on June 6th, 2001. Despite the conference, Defendants, including Chesney, have made none of the required FRCP Rule 26(a) disclosures.

Upon a FRCP Rule 56 motion for summary judgment filed at the onset of a civil action in conjunction with other motions and based largely upon a flat denial of facts the evidence of which could only be obtained by the non-moving party by documents, videotape and witnesses almost all of which are exclusively controlled by the moving party, it is especially appropriate that the Court

see to it that the opposing party has been given every reasonable opportunity to make the record complete through discovery prior to ruling on the motion. Lockhart v. Hoenstine (1969, CA 3 Pa), 411 F.2d 455, cert. den. (1969) 396 U.S. 941, 24 L.Ed.2d 244, 90 S.Ct. 378; See e.g. United States use of Kolton v. Halpern, 260 F.2d 590 (1958 CA3 NJ). Defendants' 12(b) motion to dismiss has not yet been decided and Defendants have not even filed an answer to the averments of fact in Plaintiff's complaint so as to define and narrow the matters truly at issue. Since summary judgment is a "drastic device" it should not be granted when one party has not yet been afforded adequate time to exercise its opportunities for pretrial discovery pursuant to Rule 56(f). National Life Ins. Co. v. Solomon (1975, CA 2 NY) 529 F.2d 59. Most of the discoverable information in this matter relating to liability of the Defendants is solely in the control of the Defendants rather than Plaintiff.

Because the liability of a supervising state actor, such as Defendant Chesney, for the actions of his subordinates at SCI-Frackville is predicated upon his subordinate's actions being in violation of Plaintiff's civil rights and proof of his knowledge of and acquiescence to or participation in those violations of Plaintiff's civil rights, Plaintiff needs to establish the identity and underlying liability of Defendants John Doe #2 through John Doe #5 - the subordinates of Defendant Chesney. Plaintiff wants to take Defendant Chesney's deposition but at such time as the underyling factual support for Plaintiff's claim against him is fleshed out. By necessity, given the basis of Defendant Chesney's liability, discovery on all of Plaintiff's claims must take place before Defendant Chesney's role in events and his liability can be adequately addressed. The liability of John Doe #2 through John Doe #5 is the foundation upon which liability attaches for Defendant Chesney.

To that end Plaintiff needs to take the depositions of the subordinates involved in supervising the visitation area of SCI-Frackville, including those present during the visitations Plaintiff had with Defendants Mims.

The underlying unconstitutional acts of Defendant Chesney's subordinates must be detailed through discovery depositions before Defendant Chesney can be adequately questioned about what he knew and when he knew it. He has already denied any knowledge of the visitations between Plaintiff and Defendant Mims, except for the last visit on 2/15/99 which was videotaped by his subordinates. Before these individuals can be deposed, defendants must identify the persons involved. The deposition of SCI-Frackville security captain Joseph Michaels is also needed.

This type of disclosure is encompassed by FRCP Rule 26(a) as would be a roster of SCI employees on duty during the visitations, the sign-in sheets for visitors present in the visitation area during the visitations, the prisoner's approved visiting list for Defendant John Mims, the Form DC-313A for Defendant John Mims, the training materials for the visitation area correctional officers on duty during the visitations, the documentation available to Defendants concerning Defendant John Mim's prior sexual assaults on younger female children and other crimes, all mental health/psychological records on Defendant John Mims, the incident reports and documents relating to the tips Defendants received about Defendant John Mims' conduct with Plaintiff during visitations and especially the last incident taped on 2/15/99, the visitation area surveillance tapes for the visitations, and the records of the investigation, criminal referral, and review of the actions taken in conjunction with the visitations and Defendant John Mims' sexual assault and rape of Plaintiff in the visitation area of SCI-Frackville. In order to establish that the

underlying conduct of Defendant Chesney's subordinates was in violation of Plaintiff's civil rights and that they exhibited a deliberate indifference to the risk of harm to Plaintiff, Plaintiff needs to depose other visitors to SCI-Frackville present during the visitations between Plaintiff and Defendant John Mims.  Defendants, including Defendant Chesney - the man who runs SCI-Frackville - have failed to make any of the required discovery disclosures provided for by FRCP Rule 26(a).

Plaintiff, as a 10 year old child subjected to unthinkable physical abuse, cannot describe everything she was subjected to and she cannot describe all the physical contact between her and Defendant John Mims or how it appeared to others in the visitation area.  In particular, Plaintiff needs defendant to provide their records of all the individuals (both prisoners and other visitors) who were present in the visitation area during the visitations when Plaintiff was sexually assaulted and raped.  Not all of those individuals need be deposed although those who identify themselves as having actually observed Defendants Mims and Plaintiff during the visitations will provide valuable insight into what was going on and what Defendants chose to ignore over numerous visitations until 2/15/99.  The people present in the visitation area on 2/15/99 during the physical contact between Plaintiff and Defendant Mims videotaped by Defendants possess important eye-witness testimony about what Defendants did and let Defendant Mims do to Plaintiff prior to stopping it.  Testimony of independent witnesses is essential to providing a very clear conception of what happened - something that Plaintiff, because of her age and the nature of what Defendants did to her, cannot.

Plaintiff would also like to take a short deposition of a corporate designee of SCI Frackville and the Pa. DOC in order to learn the truth about what "state-wide policy" Defendant Chesney referenced in his declaration in support of the motion for summary judgments. Press releases from the Pa. DOC spokesperson immediately after the arrest of Defendants Mims for the sexual assault and rape of Plaintiff in the visitation area of SCI Frackville on February 15, 1999 clearly indicate that, contrary to Defendant Chesney's declaration, the prisoner/visitor physical conduct allowed at the various prisons of the Pa DOC vary and are set locally rather than by some overriding state-wide policy. The present public relations publications of the Pa DOC also reflect considerable local variation on each prison's prisoner/visitor physical contact policies. Defendant Chesney would ultimately be questioned at deposition as to his knowledge of the prisoner/child visitor physical contact policies of his prison and of the Pa DOC generally, if such policies existed. Attached are press stories and the presently articulated policies of some of the PaDOC's prisons that appear to contradict Defendant Chesney's declaration. Pursuant to FRCP Rule 26(a) these documents were produced to Defendants by Plaintiff.

Plaintiff also seeks to have Defendants provide complete copies of all radio, televison, electronic and print media public relations releases as the ones collected by Plaintiff to date have included admission against interest including the fact that Defendants were aware of Defendant John Mims' history of sexual violence against younger female children when they permitted the visitations with extended physical contact between him and Plaintiff. Plaintiff would like to take the depositions of the PaDOC spokespeople (including Alison Delsite and Mike Lukens) regarding the statements they made and the sources of the information provided to media outlets concerning what happened to Laquita Murray. In particular, Plaintiff would like to take the

depositions of individuals from SCI-Frackville (including Carol Dotter) who made statements to

the media.  The information contained in those press releases contain admissions which, given

Defendant Chesney's responsibility for SCI-Frackville, can probably be traced back to him to

show what he knew and when he knew it.  Attached are some of the press releases containing

admissions against interest for the Defendants.  Pursuant to FRCP Rule 26(a) these documents

were produced to Defendants.

Finally, Plaintiff is contacting a legal records service to serve subpoenas  to obtain copies

of the State Police Investigative files concerning the criminal acts of Defendants Mims.  Plaintiff

wishes to briefly depose the State Troopers (Cpl. James Nettles and trooper Jeffrey Szczecina)

and York County investigators concerning the investigation of Defendants Mims and additional

facts concerning the sexual assaults and rape of Plaintiff at SCI-Frackville's visitation area.

For the foregoing reasons, Plaintiff requests that this Honorable Court defer consideration

of Defendant Chesney's motion for summary judgment and grant Plaintiff a continuance of time in

which to substantively respond to Defendant Chesney's motion in order that an opportunity for

adequate and meaningful discovery of the facts can occur unimpeded.



Dated:  6/23/01                                          BY: _____

                                                                    ALBERT J. MICHELL, ESQUIRE
                                                                    PA Attorney Id. # 76797
                                                                    Counsel for Plaintiff Laquita Murray

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LAQUITA MURRAY, by and through her father
and natural guardian, DAVID L. JONES         :        NO.: 1:CV-01-00255
     Plaintiffs                 :

  E.                                              :

PENNSYLVANIA DEPARTMENT OF           :
CORRECTIONS                                       :        (KANE, J.)
et al                                                     :
     Defendants                :

        :

  **I, Albert J. Michell, Esquire, hereby declare under penalty of perjury that the**

**foregoing information contained in the attached pleading is true and correct to the best of**

**my personal knowledge.**

Dated: 6/23/01        BY:                
                 ALBERT J. MICHELL, ESQUIRE
                 PA Attorney Id. # 76797
                 Counsel for Plaintiff Laquita Murray

## **CERTIFICATE OF SERVICE**

I, Albert J. Michell, Esquire, attorney for Plaintiff hereby certify that a true and correct copy of the foregoing FRCP Rule 56(f) request for continuance and supporting affidavit of present inability to obtain facts to oppose summary judgment has been served via first class mail, postage pre-paid on this 23rd day of June, 2001, to the following:

Francis Filipi, Esquire
Office of the Attorney General
Commonwealth of Pennsylvania
15th Floor
Strawberry Square
Harrisburg, PA 17120

Albert J. Michell, Esquire

# Couple ordered to trial

Press Stories

## Charged in prison rapes, Mimses waive hearings

**STAFF AND WIRE REPORTS**

A York County couple waived their rights to a preliminary hearing yesterday on charges that stem from an alleged series of sexual assaults on a 9-year-old girl in a prison visiting room.

John Odell Mims, 34, was charged with nine felony offenses — including rape, involuntary deviate sexual intercourse and criminal solicitation — in what authorities described as a series of secretive assaults in a supervised room at the Mahanoy State Correctional Facility in Schuylkill County.

Police said Mims, who has a history of sexual assault against children, instructed his wife, Georgette Mims, to bring the girl on 16 visits to the facility over the course of a year. John Mims then committed sexual acts on the girl on at least three occasions, police said.

Georgette Mims was charged with five felony counts, including criminal conspiracy, and one misdemeanor charge of corruption of minors.

Schuylkill County prosecutor Karen Byrnes-Noon said she was happy the Mimses waived the hearing because it spared the child from having to testify in court. She would not comment on whether there could be a plea bargain in the couple's case.

In March, police arrested John Mims, who was in prison on a parole violation stemming from a robbery in York. His 30-year-old wife was arrested on the same day at her York home.

**Suspect's instructions?** Police found letters John Mims allegedly wrote his wife about sexual acts with the child, according to court papers. The letters also instructed Georgette Mims how to dress the child and to encourage her to participate in the acts.

The child told York County officers that John Mims molested the girl almost every time his wife took her to visit, according to affidavits. Prison records show 16 such visits from April 4, 1998 to Jan. 23, 1999. Police said John Mims concealed himself with a coat or some garment in order to assault the child.

**History of child assault:** Records indicate that John Mims has a history of sexually a[...] [...]ing children [...]

## ■ COUPLE

### Mimses waive hearings

*Continued from Page E1*

He was 14 years old in July 1979 when he was charged as a juvenile with assault and indecent assault after forcing a 10-year-old girl under a bridge at Pennsylvania Avenue and Wood Street, according to 1983 reports published in The York Dispatch.

In August that same year, John Mims was charged with forcing an 11-year-old girl into a field near Manchester Crossroads, which was then Two Guys Shopping Plaza. Once there, he pushed her down, removed her underpants and had removed his own before a witness to the event went for help, according to news reports.

For that incident, John Mims was placed in Loysville Youth Development Center. While on Thanksgiving furlough from the institution, he raped a 9-year-old girl — Tina Shaffer, now 29 — as she left Delphia Shopping Plaza at 300 E. Philadelphia St.

John Mims was adjudicated

delinquent for the assault an[d] was sent to the Youth Deve[l]opment Center, Secure Unit, i[n] the city of New Castle. He wa[s] released in March 1981. Nearl[y] three years later, he was accus[ed] of raping a 7-year-old girl i[n] his foster home, according t[o] news reports.

Then 18, he was charged a[s] an adult and taken to Yor[k] County Prison. He was re[leased] 14 days later when th[e] case was dismissed, accordin[g] to prison records.

John Mims is now in priso[n] awaiting trial on the mos[t] recent charges. His wife was i[n] Schuylkill County prison thi[s] morning on $15,000 bail.

According to state correc[tional] officials, prison officer[s] followed policy correctly in su[pervising] supervising visits involving th[e] inmate and the 9-year-old girl.

The prison, near Frackville[,] opened in 1993. Its visitin[g] room is wide open, with table[s] and chairs and clear sight lines to allow monitoring by correc[tions] tions officers. As many as 12[0] people were in the room durin[g] the day of the final visit, but of[ficials] ficials could not say how man[y] were present at the time of th[e] visit.

YORK DAILY RECORD ■ THURSDAY, MAY 27, 1999

# LOCAL

United Way
allocates
funds. 3B

# York couple waive hearing

■ The move spared a child
from testifying in court
in the sex-crimes case.

BY CARYL CLARKE
Daily Record staff

John Odell Mims and Georgette
Murray Mims waived their preliminary
hearing Wednesday on multiple felony
charges stemming from the sexual moles-
tation of a pre-teen girl in the Mahanoy
State Prison visiting room.

Troopers, deputy sheriffs, prison
guards, lawyers, York County investiga-
tors and reporters watched the accused
York couple mutely sign their names in
District Justice William A. Slezosky's
courtroom in Schuylkill County.

The strange morning started with
Department of Corrections cars pulling
into the field behind the courtroom and
[...]ride with[...]ly, John Mims slouched

phers milled about.

Indoors were Georgette Mims' parents
and sister. Also present were the former
stepmother of the child John Mims alle-
gedly molested and the girl's father.
Three York County investigators had
been summoned to testify: child abuse
prosecutor Edward Paskey, child abuse
Detective Dennis Smith and Children
and Youth investigator Jennifer Maclay.

Slezosky called Schuylkill County
prosecutor Karen Byrnes-Noon and the
Mims' attorneys, Stephen J. Bushinski
and Chris Riedlinger, into his office.

At 10:40 a.m., Bushinski set the room
abuzz by stepping out and announcing,
"We have an offer. Let's go and see Mr.
Mims."

He strode through the back emergen-
cy exit. For the next hour, attorneys
hopped in and out of the back seat
where Mims sat. Someone muttered
about court in a car.

[...]et [...]mistakenly [...]med at

Troopers in the Frackville barracks
arrested John Mims, 34, on March 26 in
Mahanoy state prison, and Georgette
Mims, 30, the same day at her home in
the 300 block of Walnut Street in York.
John Mims was in prison for a York rob-
bery.

Slezosky arraigned John Mims on
nine felony charges, including rape, in-
voluntary deviate sexual intercourse and
criminal solicitation, and three misde-
meanors. Police found letters he alleged-
ly wrote his wife about sexual acts with
the child, according to court papers.

The child told York County officers
that John Mims molested her almost
every time Georgette Mims took her to
visit Mahanoy state prison, according to
affidavits. Prison records show 16 such
visits from April 4, 1998 to Jan. 23, 1999.

Slezosky arraigned Georgette Mims on
five felony counts, including criminal
conspiracy, and one misdemeanor
charge of corruption of minors.

that Georgette Mims didn't realize what
was happening to the child. "I believe
she was conned by a convict," she said.
Georgette Mims remains in prison. Georg-
ette Mims remains in Schuylkill County
prison on $15,000 bail.

Back in the courtroom Wednesday,
Paskey said defendants can waive a pre-
liminary hearing to the Common Pleas
Court. Plea bargains have no place in
district court, he said.

Nevertheless, at 11:05 a.m., a voice
said "Georgette is here now. She agreed.
We will have her do the paperwork?"

The Schuylkill prosecutor. Byrnes-
Noon, said she could not discuss any-
thing about a plea bargain. She was
happy the Mims waived because it
spared the child from having to testify in
court.

The victim remains in foster care.
Slezosky grimly supervised the Mims'
signatures to waive their cases.

"May God have mercy on your souls,"
he said, while handing the paperwork to
he[...] "I am finished with them."

# MIMS WAIVE THE PRELIMINARIES



DAILY RECORD / PAUL KUEHNEL



DAILY RECORD / PAUL KUEHNEL

John Odell Mims, in the center above, is escorted into District Justice William A. Slezosky's office Wednesday in Mahanoy City for a preliminary hearing on charges that he sexually molested a pre-teen girl in the Mahanoy State Prison visiting room. He and Georgette Mims, at left, waived their preliminary hearing Wednesday. She is accused of helping John Mims in his alleged crimes against the girl. There was drama in the courtroom when some thought a plea bargain was under consideration. Prosecutors were glad the victim didn't have to testify in court. For the full story, see page **1B**.

# ...ccused pedophile began at 14

## Prison official knew of his past, but left visits up to adult

By KATHY STEVENS
Dispatch/Sunday News

The inmate charged with raping a 9-year-old girl in a prison visiting room was also accused as a teen-ager of sexually assaulting at least four young girls.

And officials at the State Correctional Institution at Mahanoy in Schuylkill County — where John Odell Mims Jr., 34, reportedly raped the girl several times during the past year — knew of his criminal history.

"We were aware of a juvenile record for him. The red flag is to let the responsible (adult) know about it," said Mike Lukens, press secretary for the state Department of Corrections.

"We put the decision (of visitation) in the (adult's) hands. If the (adult) doesn't permit (the visit), then it doesn't take place."

He said prison officials followed policies, which do not include ensuring the safety of young children against known sex offenders.

Lukens said the girl's mother was informed by officials at SCI Mahanoy of Mims' prior arrests. Those arrests involved accusations of sexual assaults on four girls, ages 7 to 11, between July 1979 and Jan. 6, 1983.

"There's only so much we can do," Lukens said.

Georgette Mims, of 307 Walnut St., faces felony rape charges since she accompanied the girl during each visit, encouraged the child to participate in sex acts with John Mims and told the girl to wear attire that prevented detection of the alleged assaults, police allege.

"There were people maybe 10 feet away when this was going on and no one knew it was happening," Lukens said.

Records indicate that Mims began raping children in his teens.

**Prior arrests:** He was 14 years old in July 1979 when he was charged as a juvenile with assault and indecent assault after forcing a 10-year-old girl under a bridge at Pennsylvania Avenue and Wood Street, according to 1983 reports published in The York Dispatch.

In August that same year, Mims was charged with forcing an 11-year-old girl into a field near Manchester Crossroads, which was then Two Guys Shopping Plaza. Once there, he pushed her down, removed her underpants and had removed his own before a witness to the event went for help, according to news reports.

For that incident, Mims was placed in Loysville Youth Development Center. While on Thanksgiving furlough from the *See* RAPE/C4



BILL KALINA/STAFF PHOTOGRAPHER

Tina Shaffer was raped at age 9 by John Odell Mims, who is now accused of repeatedly raping a 9-year-old girl in the visiting room at the State Correctional Institution at Mahanoy.

## An earlier victim recalls terror

By KATHY STEVENS
Dispatch/Sunday News

Innocence. Trust. Security.

This is what Tina Shaffer says John Odell Mims Jr. took from her nearly 20 years ago when he raped her behind a convenience store in York.

Mims, now a 34-year-old inmate at the State Correctional Institution at Mahanoy, was charged last week with repeatedly raping a 9-year-old girl inside the prison visiting room. Mims' wife, Georgette Mims, also faces felony rape charges for her alleged participation in the sexual assaults of the child.

"I feel so bad for this girl. I wish I could tell her that she'll get through it," said Shaffer, a 29-year-old mother of two who now lives in Harrisburg. "I did."

The store was a few hundred yards from her mother's house in the 200 block of East Philadelphia Street, and Shaffer had walked there to get soda to bring to a Thanksgiving dinner later that day.

"He stared me right in the face and told me his friend was hurt and said I needed to help him," Shaffer said.

She looked at nearby adults

> ### "I feel so bad for this girl. I wish I could tell her that she'll get through it."
>
> Tina Shaffer

hoping one of them would sense her terror and tell her what to do.

No one did, except Mims, then 14, as he led Shaffer, then 9, toward the rear of the building.

"Then, you were told not to take candy from strangers. You didn't know what to do, or to scream as loud as you could and run," Shaffer said.

She looked around the corner of the building and saw no one.

"The pit of my stomach dropped," she said.

Mims grabbed her hand, pulled her behind the building and threatened to kill her if she screamed.

"When he was done, he grabbed the bag of stuff from the store and left," Shaffer said. Battered and bloody, she got up from a patch of grass, pulled on her jeans and ran home.

"Nobody helped me. I remember thinking nobody ever believes kids."

**'That's him':** But her mother did. The two went to the hospital, where Shaffer was examined and treated by doctors.

Within a few days Shaffer told Vic Castellano, then a detective for York City Police, everything she could remember.

Castellano offered to buy Shaffer a soda and walked her past a bench where Mims was sitting, waiting to retrieve a bike he had *reported stolen.*

"I froze. (Castellano) asked what was wrong and I said, 'That's him,'" Shaffer said. "He was so brazen to come into the police station a few days after he raped me."

Mims was arrested and later adjudicated delinquent for the rape and committed to the Youth Development Center, Secure Unit, New Castle. He was released in March 1981.

"I always put him out of my mind, thinking he's just gone," Shaffer said. But now, after reading recent news reports, she's afraid "He's still doing this."

"They need to put him to sleep or castrate him or something."

# Inmate charged in rape of child

■ John Mims' wife, Georgette, is accused of bringing the girl specifically for sex during prison visits.

*Staff and wire reports*

A York County woman has been charged with helping her incarcerated husband rape a pre-teen girl numerous times in the prison's visiting room over the past year, state police at Frackville said on Wednesday.

The girl said inmate John Mims, 34, sexually assaulted her during several visits to State Correctional Institution at Mahanoy, Schuylkill County, since April 1998.

Mims' wife, Georgette Mims, was arrested Friday at her home in the 300 block of Walnut Street in York.

She was charged with felony counts of criminal conspiracy to commit rape and endangering the welfare of children as well as with misdemeanor charges. Georgette Mims was committed to the Schuylkill County Prison in lieu of $50,000 bail.

Mims, a York native, was arrested Friday at the state prison and was arraigned on felony counts of rape and involuntary deviate sexual intercourse as well as misdemeanor charges. His bail also was set at $50,000.

Mims knew when the visiting room guard was occupied and used that opportunity to assault the girl, Trooper Jeffrey Szczecina said. Prison officials contacted state police when they suspected Mims might have been assaulting the girl.

Mims' wife accompanied the girl on each visit from April 4, 1998 to Jan. 23, and knew her husband was abusing the girl, police said. It was not known whether the wife was in the visiting room as the alleged assaults took place.

Mims instructed his wife in letters to

See RAPE, page 9A

## Rape

□ Authorities were tipped off by someone in the visiting room.

*Continued from 1A*

encourage the girl to participate in sex acts and to dress her in a long coat so that the alleged assaults could be carried out in the prison's visiting room without being seen by guards or surveillance cameras, police said.

No prison employees are being investigated or disciplined, state Department of Corrections spokesman Michael Lukens said. "Our people did the job they were supposed to do," Lukens said. "We uncovered this and it resulted in the investigation."

Authorities were tipped off at the end of January by someone in the visiting room who was not sure what was happening but thought something suspicious was going on, Lukens said. Officials then paid special attention to the inmates' next visit, which was on Feb. 15 and led to the charges, he said.

"It seems clear there was a deliberate and planned attempt to conceal what was going on, to the extent that there were people in the visiting room (close by) and they had no clue what was going on," Lukens said. "It really wasn't a blatant kind of thing."

Lukens said inmates and their guests meeting in the prison's visiting room are watched by at least one guard and are also under electronic surveillance. He said the prison turned over surveillance videotapes to the state police.

The main visiting room holds up to 150 people and is crowded on weekends, said Carol Dotter, spokeswoman of the State Correctional Institution at Mahanoy. Mims often received visits from his wife and the girl on weekends, according to the arrest affidavit.

Inmates and visitors are permitted to have limited physical contact.

"An inmate is permitted to embrace when the guest arrives and when they leave," Dotter said. She said that a child sitting on an inmate's lap has been permitted in the past.

Mims has been incarcerated at the state prison since Jan. 6, 1998, after he violated parole related to a 1992 convenience store robbery, officials said.

His wife has no prior convictions, said York County Executive Deputy Prosecutor Edward Paskey in the child abuse unit. She was a 1987 graduate of William Penn Senior High School.

The couple are scheduled for preliminary hearings April 14 before District Justice William Slezosky in Mahanoy City.

# Woman relates assault by Mims

■ A 1979 rape victim suggested castration for the same man accused of raping a girl in a prison visiting room.

**By CARYL CLARKE**
*Daily Record staff*

Thanksgiving Day has never been the same since 1979 when John Odell Mims, then 14, raped Doris Shaffer's 9-year-old daughter, Tina.

"She went to Rutter's on Thanksgiving Day to get soda and candy," Shaffer recalled. "He just grabbed her and raped her. She didn't come home for a while. She burst in the back door holding her bloody clothes. Even after I got her counseling, I don't think she will ever get over it."

Did her daughter know Mims?

"No. No. No. No. She didn't know him," Shaffer replied.

Mims had already been sent to juvenile detention for prior offenses.

"They left him out for Thanksgiving to rape my little girl," Shaffer said. "He is an animal."

York Police detectives Vic Castellano and William Farrell interviewed the child two days later at the police station, Tina Shaffer said. She described her assailant's belt. When the interview ended, Tina said she went down for a soda and spotted the rapist sitting on a bench. He had come to report the theft of his bicycle.

"I froze," said Tina Shaffer, now 29. "I remember Detective Castellano asking 'What's wrong? What's wrong?'"

Castellano's eyes followed her stare to the boy on the bench.

"That's him!" the girl responded. "That's him right there."

"Are you sure?" Castellano asked. She nodded.

Officers arrested Mims and found the belt in his home. Prosecutor Sheryl Dorney got a conviction that added two years to Mims' time in a juvenile facility.

Castellano, now a deputy sheriff, remembered the case.

"That wasn't the only girl he raped," Castellano said Thursday. "Tina was the second. His M.O. was to grab them off the street and rape them. He also has a history for robberies of pizza delivery

# Mims

**Continued from 1A**

•  •  •

1986.

The latest charges against Mims occurred during his incarceration at Mahanoy State Correctional Institution in Frackville. They allegedly involve molestation of a pre-teen girl whom Mims' wife, Georgette Mims, brought to the prison's visiting room.

On Feb. 17, the girl told police of being sexually abused almost every visit to Mahanoy, according to Mims' arrest affidavit in District Justice William A. Slezosky's office.

Capt. Joseph Michaels of Mahanoy security reported his investigation into sexual contact between Mims and the girl revealed it occurred at least three times from April 4, 1998 to Jan. 23. A search warrant served at Georgette Mims' home in York yielded letters from her husband discussing sexual contact with the girl during visits to Mahanoy.

State police at the Frackville barracks charged John Mims with rape, involuntary deviate sexual intercourse, indecent assault, indecent exposure, endangering the welfare of children, corruption of minors and criminal solicitation. Slezosky set bail at $150,000.

Georgette Mims was arraigned on charges of conspiracy, endangering the welfare of children and corruption of minors. She remained at Schuylkill County Prison in lieu of $150,000 bail.

Castellano said, "He shouldn't have any visitors. He should suffer for what he did. I hope this opens their eyes all over the state of Pennsylvania."

Before the rape, Tina Shaffer said, she enjoyed her life outdoors, the freedom to walk to a nearby store for treats.

"I was raped one block from my house," she said. "I became afraid to go outside to play. I didn't like being in the house myself. I didn't like strangers at all."

She has trained her children to run from trouble and not to trust strangers.

She continued, "I actually wouldn't mind going to a hearing on this case and telling the judge he would have to be half crazy not to castrate him for what he is doing."

# Relatives angered by attacks

■ A female relative by marriage blamed the prison for the alleged rape of the girl.

By CARYL CLARKE
*Daily Record staff*

Relatives of the pre-teen girl allegedly repeatedly raped by an inmate at Mahanoy State Correctional Institution sputtered in anger.

The Mahanoy inmate, 34-year-old John Odell Mims, married Georgette Murray Mims while he was incarcerated at the York County Prison.

"Their marriage was never consummated because he has been in prison the whole time," said one woman related by marriage to the child.

Police arrested Georgette Mims, 30, of the 300 block of Walnut Street in York, on March 26. Their investigation included descriptions by the child of sexual assaults by John Mims in the Mahanoy visiting room and a collection of letters seized at Georgette Mims' house. He, too, was charged with the offenses.

In the letters, John Mims instructed his wife when to bring the child to Mahanoy and how to dress her for sexual acts, according to his affidavit. He told his wife to encourage the child to participate in the sexual acts. The letters referred to sexual assaults at various times from April 1998 to January.

The little girl became emotionally numb from the assaults, the woman relative said. She spoke of the videotape Mahanoy guards recorded of Mims' alleged Valentine's Day assault on the child. It showed Georgette and John Mims sitting side-by-side while the child sat in Mims' lap with her coat around her. It was clear what was happening.

"Then he stood up and cleaned himself off," she said. "Why in h— did they watch and let him do it. That little girl is ruined. They could have stopped it from happening again. I wish there was more I could have done."

She blames the prison because inmates complained to prison authorities of the blatant sexual assaults.

Alison Delsite, spokeswoman for the Department of Corrections, differed.

"This was discreet and concealed," Delsite said. "This was so discreet and so well planned between Mr. Mims and Georgette that people sitting 5 feet away were not aware this was going on next to them."

As soon as a corrections officer became suspicious, he watched closely.

"He stopped the visit and state police were notified right away," Delsite said.

The girl's father is presently in York County Prison for minor offenses, such as driving on a suspended license. His attorney, Farley Holt, is trying to convince the courts to release his client on house arrest so he can care for his daughter.

Holt also said it was a tip from

*Why in h— did they watch and let him do it. That little girl is ruined.'*
■ GIRL'S RELATIVE

an inmate that led to the guards' scrutiny.

Holt saw the tape.

"It was fairly obvious what was going on," he said. "I don't know why they didn't intercept him. At least when it started, I don't know why they let him go on. I find it incredible this could happen in the setting that it did."

His client hopes to sue the state and the Department of Corrections, Holt said. The lawyer knew they would have to cross the hurdle of governmental immunity.

"It's a shame," Holt said. "A total shame. I really feel bad for this little girl. She will be scarred for life."

# Prisons rethink policies for visits

■ **The alleged rape of a pre-teen girl by an inmate creates serious concern among prison officials.**

**By CARYL CLARKE**
*Daily Record staff*

Visitors to Camp Hill State Correctional Institute cross a dirty parking lot to a small, dirty building where they empty their pockets into a stained metal tray.

A guard keeps everything, even tissues. He sends visitors back outdoors to follow a sidewalk path to the building next door. Visitors pull open the door into a large, confusing room of chairs. They are directed down the middle of the room to a guard desk.

The Camp Hill visiting room looks like a cheaply finished basement, with large pipes overhead and water-stained, damaged ceiling tiles.

An endless parade of mothers and grandparents with children travel across the wide room to the guards' desk at the far end. They ask to visit with their favorite inmate, receive a number and are directed to wait in an assigned seat.

## RELATIVES EXPRESS ANGER
*Page 7A*

Once seated, inmates may not stand. Only visitors may walk to the vending machine area to buy food or treats.

Couples snuggle. Some openly neck. Children squeal and race into their dads' arms. Dads lift their babies high in the air, exchanging smiles and shared delight. Some dads talk while cradling their baby with a bottle.

Taped music blasts across the room.

It's a far cry from life at Mahanoy State Correctional Institution in Frackville.

Necking is not tolerated in the wide-open room where visitors spend time with inmates. Inmates are neither assigned seats nor restricted to their chairs. They may not, however, walk to the vending machine area, said Jamie

*See VISIT, page 7A*

# Visit

## Continued from 1A

Day, whose son served time at Mahanoy.

Day couldn't imagine how inmate John Mims, 34, of York, allegedly managed to repeatedly rape the pre-teen girl his wife brought to the Mahanoy visiting room during the past year.

"Everybody would have to see what was going on," Day said. "It's just one big room. The guards would sit there and watch."

Alison Delsite, spokeswoman for the Department of Corrections, expressed concern about the alleged actions of both John Mims and his wife, Georgette.

"This couldn't have happened without the assistance of a woman." Delsite said. "We are taking it seriously. Georgette Mims was made aware of Mr. Mims' background.... She signed all the appropriate forms on

March 14, 1998. She was made aware of every charge against him."

That would have included John Mims' convictions for raping young girls.

"We are looking at our policies to see what we should change," Delsite said. "This is such a rare circumstance. It took a lot of planning. I don't know that it's fair to punish 99.9 percent of the inmates for what one person did."

Visiting rooms differ among Pennsylvania's 25 state prisons.

Although Camp Hill requires inmates to stay put, that is not the norm.

"No policy says they have to sit in their chair and not move," Delsite said.

At Rockview State Correctional Institute near State College, visitors pass through a sensitive metal detector that requires slipping out of shoes with steel insteps. A guard collects keys. Another guard examines photo identification. Visitors sign in with their name, address, and de-

scription of their parked car, their relationship to the inmate, and the number of the inmate, and approach the microwaves.

Guards congregate at the desk where everything is visible, including the glass rooms. They periodically walk about, exchanging greetings with inmates or giving orders.

The visiting room at Rockview is clean, somewhat friendly and airy if the picnic yard door is open. Visitors stop at a guard desk upon entering the room. They hand over a computer paper listing the identity of the requested inmate. They find their own seats and wait.

It resembles an airport waiting area with double rows of chairs facing each other and a single line against the right wall. Two glass corner rooms are used by lawyers and reporters with permission to interview an inmate. A third glass room welcomes children with toys and a television. Families gather there with toddlers at play, fathers giving infants bottles and even changing diapers.

Inmates at Rockview can walk up to the vending machines, but cannot handle money. Visitors buy food and drinks, and heat

sandwiches in one of the two microwave ovens. Inmates cannot approach the microwaves.

It's typed into a computer that tells the guard whether the visitor is allowed. Coats are left on a rack opposite the guard.

Delsite, the corrections spokeswoman, said state prisons allow inmates personal contact with visitors out of concern for the families.

"No-contact visits would punish the families," Delsite said. "It's a problem that their loved ones are incarcerated. We like them to be able to hug their person hello and hug them goodbye."

Death row inmates, however, get no contact visits, Delsite said. As at the state's county jails, they speak over telephones with a glass wall between the visitor and inmate.

Delsite repeated the importance the department gives to family visits and the intent that any remedy to the alleged assaults would not penalize other inmates.

# Pair charged with rapes at state prison

## Police say 9-year-old attacked during visits to local inmate

**By KATHY STEVENS**
*Dispatch/Sunday News*

A York woman faces felony rape charges for her alleged role in arranging sexual contact between a 9-year-old and an inmate in a state prison waiting area.

The girl was allegedly raped repeatedly since April during visits with inmate John Odell Mims, 34, at the State Correctional Institution at Mahanoy in Schuylkill County, according to state police.

Georgette V. Mims, 30, of 307 Walnut St., accompanied the girl on each visit from April 4, 1998, to Feb. 14 and allegedly knew her husband was abusing the girl while the three of them were in the visiting room at the prison, police said.

"Mr. Mims was using the young girl as a shield to carry on his activities. She wore a long coat and long dress and was sitting near or around his lap during the visits," said Cpl. James Nettles, criminal unit supervisor at the state police barracks in Frackville.

John Mims allegedly instructed his wife in letters to encourage the girl to participate in sex acts and to wear attire that allowed the alleged assaults to remain undetected by guards and surveillance cameras, Nettles said.

"The Mims had a very clever operation and the investigation will probably reveal that other inmates provided some distraction to prison guards," he said.

Nettles said when the prison guards did notice "unusual activity" during a visit Feb. 14, they got a supervisor, stopped the visit, and called police.

No prison employees are being investigated or disciplined, Department of Corrections spokesman Michael Lukens said. "Our people did the job they were supposed to do," Lukens said. "We uncovered this and it resulted in the investigation."

Lukens said inmates and

*See* **RAPES**/A6

> **"Mr. Mims was using the young girl as a shield to carry on his activities. She wore a long coat and long dress and was sitting near or around his lap during the visits."**
>
> Cpl. James Nettles,
> criminal unit supervisor

# ■ RAPES

## Inmate visited on weekends

Continued from Page A1

their guests who meet in the prison's visiting room are watched by at least one guard and are also under electronic surveillance.

The main visiting room holds up to 150 people and is crowded on weekends, said Carol Dotter, spokeswoman for the prison. Mims often received visits from his wife and the child on weekends, according to the arrest affidavit.

Inmates and visitors are permitted to have limited physical contact.

"An inmate is permitted to embrace when the guest arrives and when they leave," Dotter said. She said that a child sitting on an inmate's lap has been permitted in the past.

Georgette Mims was arrested Friday at her home and charged with conspiracy to commit rape, involuntary deviate sexual intercourse, indecent assault, indecent exposure, corruption of minors and endangering welfare of children. She remains in Schuylkill County Prison.

John Mims was arrested Friday at the prison and charged with attempted rape, involuntary deviate sexual intercourse, indecent assault, indecent exposure, corruption of minors, endangering the welfare of children and criminal solicitation to commit these offenses, police said.

He remains in SCI Mahanoy, where is serving a six-year sentence for violating parole related to a 1993 convenience store robbery. Cash bail for the couple was set by District Justice William Slezosky at $150,000 each.

The couple is scheduled for preliminary hearings April 14 before Slezosky in Mahanoy City. The girl is now a ward of the court and the investigation is ongoing, Nettles said.

— The Associated Press contributed to this report.

*Present Prison Visitation Policies*



# SCI Frackville

1111 Altamont Boulevard
Frackville, PA 17931-2699
(570) 874-4516

Opened in 1987, SCI Frackville is a maximum-security institution for male inmates.

### Click here to view the Monthly Population Report

### Key Staff

Joseph W. Chesney, Superintendent
Bruce K. Smith, Deputy Superintendent for Centralized Services
Jack Kerestes, Deputy Superintendent for Facilities Management
John C. Lasota, Business Manager
James R. Forr, Superintendent's Assistant

## Directions

**From the north:** Take 81 South to exit 36W (Route 61 North). Take Route 61 North approximately 1/8 mile to Altamont Boulevard. Turn right onto Altamont Boulevard. Take Altamont Boulevard approximately ¼ mile. SCI Frackville access road/sign is on left approximately 100 feet past Route 81 overpass.

From the south: Take 81 North to Exit 36W (Route 61 North). Take 61 North approximately 1/8 mile to Altamont Boulevard. Turn right onto Altamont Boulevard. Take Altamont Boulevard approximately ¼ mile. SCI-Frackville access road/sign is on the left, approximately 100 feet past Route 81 Overpass.

From the east: Take Route 78 West toward Harrisburg. Take Route 61 North to Frackville. Under Route 81 Overpass approximately ¼ mile, turn right onto Altamont Boulevard. Take Altamont Boulevard approximately ¼ mile. SCI Frackville access road/sign is on the left, approximately 100 feet past Route 81 Overpass.

From the west: Take Pennsylvania Turnpike toward Harrisburg. Take 81 North to Exit 36W (Route 61 North). Take 61 North approximately 1/8 mile to Altamont Boulevard. Turn right onto Altamont Boulevard and go approximately ¼ mile. SCI Frackville access road/sign is on the left approximately 100 feet past Route 81 Overpass.

Take I-80 East to I-81. Take I-81 South to Exit 36W (Route 61 North). Take Route 61 North approximately 1/8 mile to Altamont Boulevard and turn right onto Altamont Boulevard. Take Altamont Boulevard approximately ¼ mile. SCI Frackville access road/sign is on the left approximately 100 feet past Route 81 Overpass.

## Visiting information

**Hours:** 8:30 a.m. to 3:30 p.m. daily, including holidays. Visitors will not be admitted if they arrive later than 2:45 p.m.

## Rules:

To be eligible to visit an inmate, an individual must be on the inmate's approved visiting list. In addition, the visitor will be asked for identification for signature comparison. No more than five people, including children, may visit an inmate at any given time.

All general population inmates will be permitted one visit per week. A week is defined

as running from Monday through Sunday. Contact visits will be at least one hour in length. Longer visits will be permitted depending on available space and staff. Non-contact visits will be one hour in length Monday through Friday, excluding holidays, for inmates in the Restricted Housing Unit and Mental Health Unit and when determined by security needs.

Heavy demand for weekend/holiday visits may require a limited schedule for these visits. If this becomes necessary, a schedule will be posted and made available for visitors.

Visiting in the patio area adjacent to the Visiting Room is permitted at the Shift Commander's discretion contingent upon personnel available and weather conditions.

Embracing is permitted at the beginning and end of each visit.

NO objects will be exchanged between visitor and inmate without advance written approval of the Superintendent or his designee. Any item changing hands without authorization is contraband, and both inmate and visitor may be subject to disciplinary action. Inmates are not permitted to handle or possess money for any reason.

Under extraordinary circumstances, exceptions to these rules may be made with the approval of either the Deputy Superintendent or the Shift Commander.

### General Visiting Guidelines

1. All visitors must be on the approved visiting list. It is recommended that you arrive as early in the day as possible so that proper arrangements can be made in time for your visit. It may take time to notify an individual inmate for a visit, so please be patient.

2. Have proper identification with you, either one photo ID or two non-photo IDs. Acceptable forms of photo identification include any one of the following: driver's license; military, bank, employee or school ID; passport; citizenship or naturalization card; Liquor Control Board or Commonwealth non-driver ID card. Any two of the following are acceptable non-photo ID: voter's registration card, Medicare card, learner's permit or temporary driver's license, vehicle registration, birth certificate, school identification, immunization record, or a Social Security card. Identification beyond the expiration date will not be acceptable. You will not be permitted to visit without proper identification.

3. Please be sure to sign in upon your arrival. If you travel by private vehicle, you will be asked to register the year, make, model and license number of your vehicle.

4. ALL visitors and vehicles are subject to search upon entering the institution, while at the institution and before leaving the institution. If you refuse to be searched before entering the institution, your visiting privileges may be denied. If you refuse to be searched while in the institution or upon leaving the institution, you may be detained until the appropriate law enforcement authorities arrive.

5. Cameras, tape recorders, radios, chewing gum, tobacco products and handbags are not permitted in the visiting area.

6. Visits are a minimum of one hour in length; however, this may be increased depending upon the number of visits scheduled for that day.

7. Inmates placed in disciplinary custody status will have their visiting privileges restricted as to time, days of the week and location. Inmates in the Restricted Housing Unit or Mental Health Unit are not permitted visits on weekends and holidays, unless prior arrangements are approved through the Superintendent or his designee.

8. Please use good judgment and discretion in dress and behavior so as not to

embarrass others in the visiting room. Keep children under control. Failure to do so may result in early termination of your visit.

9. Ex-offenders must have prior written approval from the Superintendent to visit any inmate.

10. Do not bring any kind of gift to the institution. You may, if you wish, leave cash donations with the Officer at Administrative Control for the person you are visiting. You will receive a receipt for such donations. Remember, inmates are not permitted to take anything from the visiting area.

11. Food may not be taken into the institution. Sandwiches, candy and soft drinks may be purchased and consumed where vending machines are provided. Smoking is prohibited throughout the Visiting Area.

12. Any visitor appearing to be under the influence of alcohol or a controlled substance will not be permitted to enter the institution.

13. All inmates are informed of changes that may occur in visiting regulations. It is the responsibility of each inmate to inform his visitor of these changes.

14. Please remember that any violation of visiting regulations may result in the suspension of visiting privileges.

SCI Frackville is a Correctional Industries site that provides printing services for various entities. Operating under the name Big House Products, the Bureau of Correctional Industries teaches inmates to work while providing quality products and services at low cost.

**SELECT ANOTHER INSTITUTION**

| SCI Albion | ▼ | GO |

**RETURN TO INSTITUTION MAP**





# SCI Albion
10745 Route 18
Albion, PA 16475-0001
(814) 756-5778

Opened in July 1993, SCI Albion is a medium-security prison for men.

### Click here to view the Monthly Population Report

### Key Staff

Edward T. Brennan, Superintendent
Victoria Kormanic, Deputy Superintendent for Centralized Services
Bruce Marquardt, Deputy Superintendent for Facilities Management
Robert McCarthy, Business Manager
David Sanner, Superintendent's Assistant

## Directions

**From Erie:** Take I-90 West to exit 3. Take Route 18 South to SCI Albion. SCI Albion is located on Route 18 South about 1 mile south of the traffic signal in Albion.

–or –

Take I-79 South to exit 38. Take Route 6N west approximately 10 miles into the town of Albion. Make a left onto Route 18 South at the only traffic signal in town. SCI Albion is about 1 mile on the left.

**From Pittsburgh:** Take I-79 North to exit 38. Take Route 6N west about 10 miles into the town of Albion. Make a left onto Route 18 South at the only traffic signal in town. SCI Albion is about one mile on the left.

**From Harrisburg and Philadelphia:** Take the Pennsylvania Turnpike west to exit 3. Take I-79 North to exit 38. Take Route 6N west about 10 miles into the town of Albion. Make a left onto Route 18 South at the only traffic signal in town. SCI Albion is about one mile on the left.

**From Northern Tier counties (west of Allegheny National Forest):** Take Route 6 West to Route 6N. Take Route 6N West to Route 18 South. SCI Albion is located on Route 18 South about 1 mile south of the traffic signal in the town of Albion.

**From Northeastern Tier counties (east of Allegheny National Forest):** Take I-80 West to I-79 North. Take I-79 North to exit 38. Take Route 6N West about 10 miles into the town of Albion. Make a left onto Route 18 South at the only traffic signal in town. SCI Albion is one mile on the left.

## Visiting information

**Hours:** Open 8:30 a.m. until 3:30 p.m. daily, including holidays. Visitors who arrive after 3 p.m. will not be admitted. Visits may be terminated earlier than 3:30 p.m. depending on the number of inmates who received visits. When this becomes necessary, visits will be terminated in the order of arrival.

**Rules:**

1. Each inmate is authorized two visits per week, one of which may be on the

designated weekend. Visitors attempting to visit after the two visits have been received will not be authorized. Inmates are expected to arrange their visits so that excess visitors are not disappointed.

2. Each inmate is allowed only one visit per weekend on alternate weekends. The schedule is based on the inmate's Department of Corrections institutional number.

3. Visits for inmates in disciplinary or administrative custody status will be provided in a separate area for security purposes. Visiting hours are 9 a.m. to 2 p.m., Monday through Friday. Weekend and holiday visits are not permitted. **Administrative custody:** Visits are limited to one hour per week with immediate family only. A maximum of two immediate family members are permitted. **Disciplinary custody:** Visits are limited to a one-hour visit per month with immediate family members only. A maximum of two immediate family members are permitted.

4. Visitors must be 18 years or over unless accompanied by a parent or guardian, or unless an underage visiting permission form is on file. The only exception to this is wives. All adult visitors must have positive identification which includes date of birth. Visitors must have one of the following photo ID: driver's license, photo welfare card, military ID, bank card, employee ID, school ID, passport, citizenship or naturalization card, Pennsylvania Commonwealth non-driver ID; or two of the following non-photo ID: voter registration card, medical card, learner's permit, temporary driver's license, birth certificate, vehicle registration, school ID or Social Security card. One of the non-photo ID cards must show date of birth and current address.

5. The number of adult visitors on any given visit is limited to five. The number of children visitors on any given visit is limited to five.

6. Every opportunity will be given for a full visit, but a visit may be limited for the following reasons: (1) visitor does not comply with visiting regulations; (2) overcrowded conditions (visiting room capacity has been established as 100 visitors and inmates); (3) unexpected situation or problems arise warranting the termination of the visit necessary for everyone concerned.

7. SCI Albion has the right to assign specific seating locations for visitors and inmates, and the Visiting Room Officer will assign specific seating assignments to those inmates and visitors who are suspected of or have displayed problems with obeying the procedures.

8. Fondling and indiscreet contact is not permitted. Kissing and embracing is permitted only when the visitors and inmate meet at the beginning of a visit and just prior to terminating a visit. At no time will inappropriate and unbecoming displays of affection by personal contact be permitted. Such violations will be cause for termination of the visit and disciplinary action taken against the concerned inmate. Violations of the personal contact regulations may be cause for the removal of a particular visitor from the inmate's approved visiting list.

9. Visitors will dress appropriately and avoid clothing styles that are suggestive. See-through garments and garments that expose private parts of the body will not be permitted to be worn in the Visiting Room. Excessively provocative attire is reason to deny and/or preclude visiting. A visit may be terminated in order to maintain good taste and consideration to others. Visitors will not be permitted to wear shorts or miniskirts which are shorter than 4 inches above the middle of the kneecap.

10. Visitors who appear to be under the influence of alcoholic beverages, drugs or narcotics, or who display inappropriate behavior, shall not be permitted to visit or remain on the institution's grounds.

11. No loud, boisterous talk or profane language will be allowed inside the Visiting Room.

12. Each inmate having a visit must assume reasonable responsible for his visitor's

proper conduct during the visit.

13. Children should be controlled to the extent of consideration for other visiting groups and not be permitted to wander from the immediate areas, run about the visiting room or create noise that disturbs other visits. Failure to control children will result in the termination of the visit. A children's play area has been designated for your children's use. Please ensure they treat toys with care and return the items to their proper location after use. Children should be monitored closely when entering or exiting mechanical doors.

14. Visitors must leave the institution grounds once the visit has been completed.

15. The Visiting Room Officer, in agreement with the shift commander/shift lieutenant, shall terminate a visit upon determining that a visitor is in possession of, or is passing or attempting to pass contraband, or is engaging in any conduct or behavior which poses a threat to the orderly or secure running of the institution.

16. Inmates leaving for, or returning from, furlough will not be permitted to have visits or photos in the visiting room with the individuals responsible for their return.

17. The exchange of any item during the visit is strictly prohibited unless specific permission is received from the visiting room officer. Smoking is not permitted on visits.

18. Falsification of identification by impersonating an authorized visitor shall disqualify the approved visitor from future visits and may be considered an attempt by the inmate to circumvent visiting privileges. You will be subject to disciplinary action if investigation reveals that you knowingly conspired with a visitor to circumvent regulations.

19. A visitor may purchase refreshments from the vending machines in the visiting room for an inmate.

20. Former inmates and parolees of SCI Albion and other institutions must receive prior approval and written consent of the Superintendent and parole authorities to visit inmates at SCI Albion.

21. The maximum length of any visit will be determined by the degree to which the visiting room is being utilized by the inmates and visitors. The minimum length of any visit is one hour, although an attempt will be made to permit a minimum of two hours for any visit. Visiting volume on any given day will ultimately dictate if the latter is feasible.

22. Studies reveal that weekend visiting traffic is usually heavy; therefore, visiting room officers are delegated the authority to terminate a visit in order to make room for other visitors waiting outside when overcrowding conditions prevail.

23. Physical contact is limited to holding hands during the visiting period. There will be no sitting on laps, except in the case of children. A short kiss "hello" and a short kiss "goodbye" are permitted. There will be no long or passionate kissing or petting permitted.

24. Visitors are permitted to visit only one inmate at a time.

25. Alcoholic beverages, narcotics, drugs, cameras and tape recorders are not permitted anywhere on the grounds or inside the facility.

26. Any inmate who is found guilty of a misconduct for dealing, using or possessing illegal drugs will be prohibited from having contact visits for the following time periods: 1st offense – 180 days; 2nd offense – 360 days; 3rd offense – permanent.

27. Visitors may bring the following items into the visiting room: wallet, small change purse, reasonable amount of money, car keys, identification cards. Spiritual advisors may also bring in religious materials. A changing table for babies is available in the female rest room.

28. Visitors may bring baby food in the original unopened jars into the visiting room. Officers will open all vacuum sealed containers to ensure the jars have not previously been opened. Visitors may take up to 3 bottles into the visiting area. The bottles must be made of clear plastic and contain pre-mixed formula or white milk.

29. Visitors may take up to 3 diapers into the visiting area. The diapers must be loose, not boxed. Visitors may use only a clear plastic bag to carry the above items into the visiting area.

SCI Albion is a <u>Correctional Industries</u> site that provides vehicle restoration for various entities. Operating under the name <u>Big House Products</u>, the Bureau of Correctional Industries teaches inmates to work while providing quality products and services at low cost.

**SELECT ANOTHER INSTITUTION**

| SCI Albion | ▼ | GO |

**RETURN TO INSTITUTION MAP**



Case 1:01-cv-00255-YK    Document 19    Filed 06/25/2001    Page 28 of 32



# SCI Cambridge Springs

**451 Fullerton Avenue**
**Cambridge Springs, PA 16403-1238**
**(814) 398-5400**

SCI Cambridge Springs is Pennsylvania's second facility for female offenders. Formerly the Polish National Alliance College, the prison opened in 1992.

Click here to view the Monthly Population Report

### Key Staff

William J. Wolfe, Superintendent
David Good, Deputy Superintendent for Centralized Services
Joyce Korman, Deputy Superintendent for Facilities Management
Tammy Turner, Business Manager
Michelle Wagner, Superintendent's Assistant
Nancy Wirth, Personnel Officer

### Directions

**From Scranton/Wilkes-Barre and Allentown areas:** Interstate 80 West to Interstate 79 North to Route 198 East (exit 37, Saegertown). Then take Route 19 North to Cambridge Springs (approximately 6 miles). Take the first right (Spring Street) past the "Red & White" grocery store, follow Spring Street through the light to the second block (at a "Y" in the road). Take a right onto Ross Avenue and proceed to the top of the hill to Fullerton Avenue and turn left. Report to the first building on the right (Washington Hall).

**From Reading, Lancaster and Harrisburg areas:** Pennsylvania Turnpike to exit 3, then to Interstate 79 North to Route 198 East (exit 37, Saegertown). Then take Route 19 North to Cambridge Springs (approximately 6 miles). Take the first right (Spring Street) past the "Red & White" grocery store, follow Spring Street through the light to the second block (at a "Y" in the road). Take a right onto Ross Avenue and proceed to the top of the hill to Fullerton Avenue and turn left. Report to the first building on the right (Washington Hall).

**Philadelphia area:** Visitors can use either of the above sets of directions to get to SCI Cambridge Springs.

**Pittsburgh area:** Visitors can take Interstate 79 North and then follow directions from Interstate 79 North in the above directions.

### Visiting information

**Hours:** 9 a.m. to 4 p.m., seven days a week, including holidays.

**Rules:**

Inmates may have an unlimited number of visits Monday through Friday and one visit on the weekend from anyone on their approved visiting list.

Visitors are subject to search upon entering and leaving the institution.

Regular visits may last all day if space is available. Visits may be shortened to allow other inmates the space to be with their visitors -- this most likely will occur on

Saturdays, Sundays and holidays. If so, visits will last no less than an hour and the first visitor to arrive will be the first visitor to be asked to leave so that all inmates and visitors have time together.

Inmates in disciplinary status and administrative custody have different rules for visitation. Please check with the inmate to know if this applies to them.

All visitors that are 16 or older are required to have one form of photo identification. If the visitor does not have one form of photo ID, then two forms of other identification are required. A minor's name may be placed on the approved visiting list only with the written permission of the minor's parent or legal guardian on form DC-313A.

Visitors under the age of 18 may only visit when accompanied by an adult who is on the inmate's approved visiting list.

Purses, knapsacks, packages, etc. are to be left outside of the institution. You may bring in a change purse or wallet. The only other items allowed in the visiting room (when appropriate) are: six diapers, one plastic baby bottle, one plastic jar of baby food, car keys and an unlined sweater/cardigan. If you are in doubt about an item, call first or bring it to the attention of the Officer when you arrive.

All drugs, including prescription and over-the-counter drugs, are prohibited. Should medication be needed during your visit at the institution, please advise the Officer when you are signing in.

Visitors will park on the street on Fullerton Avenue and enter the institution via Washington Hall. This is a large building with pillars that sits outside of the fenced compound.

Do not stop and have conversations with inmates whom you are not here to visit.

Children should be fed prior to their visit to the institution. Although refreshments are available through vending machines, one should not depend upon them to be filled or in working order.

It is the responsibility of the visitors and inmates to maintain their children's behavior. If this is not done, the visit will be terminated.

Outdoor visits within the compound are available to inmates and their visitors with proper clearance during the summer months. Check with the inmate you are visiting concerning procedures.

**General visiting information**:

1. All visitors must be on the approved visiting list. It is recommended that you arrive as early in the day as possible so that proper arrangements can be made in time for your visit. It may take time to notify an individual inmate for a visit, so please be patient.
2. Have proper identification with you. You will not be permitted to visit without proper identification.
3. Please be sure to sign in upon your arrival. If you travel by private vehicle, you will be asked to register the year, make, model and license number of your vehicle.
4. ALL visitors and vehicles are subject to search upon entering the institution, while at the institution and before leaving the institution. If you refuse to be searched before entering the institution, your visiting privileges may be denied. If you refuse to be searched while in the institution or upon leaving the institution, you may be detained until the appropriate law enforcement authorities arrive.

5. Cameras, tape recorders, radios, chewing gum, tobacco products and handbags are not permitted in the visiting area.

6. Visits may last all day. However, this may be reduced depending upon the number of visits scheduled for that day.

7. Inmates placed in disciplinary custody status may have their visiting privileges restricted.

8. Please use good judgment and discretion in dress and behavior so as not to embarrass others in the visiting room. Keep children under control. Failure to do so may result in early termination of your visit.

9. Ex-offenders must have prior written approval from the Superintendent to visit any inmate.

10. Do not bring any kind of gift to the institution. You may, if you wish, leave cash donations with the Lobby Officer or other staff person designated by the institution for credit to the inmate's account. You will receive a receipt for such donations.

11. Food may not be taken into the institution. Food and soft drinks may be purchased and consumed where vending machines are provided. Smoking is not permitted in the visiting room.

12. Any visitor appearing to be under the influence of alcohol or a controlled substance will not be permitted to enter the institution.

13. All inmates are informed of changes that may occur in visiting regulations. It is the responsibility of each inmate to inform her visitor of these changes.

14. Please remember that any violation of visiting regulations may result in the suspension of visiting privileges.

**SELECT ANOTHER INSTITUTION**

**RETURN TO INSTITUTION MAP**

| SCI Albion | ▼ | GO |

RETURN



**Mission Statement**

The Pennsylvania Department of Corrections recognizes and accepts its public responsibility to maintain a safe and secure environment for both the incarcerated offenders and the staff responsible for them.

We believe that every inmate should have an opportunity to be constructively engaged and involved in a program of self improvement.

Authority exercised over inmates will be fair and professionally responsible.

We recognize our responsibility to be open to and provide access to inmate families, religious groups, and community volunteers.

We are sensitive to the concerns of victims and their need for inclusion in the correctional process.

We recognize that our greatest source of strength lies within our human resources – the men and women and their families who are the Pennsylvania Department of Corrections.

**RETURN TO DOC OVERVIEW**



IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LAQUITA MURRAY, by and through her father                 :
and natural guardian, DAVID L. JONES                      :          NO.: 1:CV-01-00255
                              Plaintiffs                  :
                        E.                                :
                                                          :
PENNSYLVANIA DEPARTMENT OF                                :
CORRECTIONS                                               :          (KANE, J.)
et al                                                     :
                              Defendants                  :

## ORDER

     AND NOW THIS_____day of_____, 2001, upon consideration of the
Motion for Summary Judgment of Defendant Chesney, and Plaintiff Laquita Murray's opposition
thereto in the form of a Rule 56(f) request for continuance for discovery, IT IS HEREBY
ORDERED AND DECREED that Plaintiff is hereby granted a continuance of time in which to
file a substantive response to said motion until such time as is set at the time of the Local Rule
16.4 Scheduling Conference for this matter.

     IT IS FURTHER ORDERED AND DECREED that, within 20 days of this order, counsel
are to confer in good faith and provide the Court with a joint proposed discovery plan pursuant to
FRCP 26(f) and confer according to Local Rule 16.3 to formulate and submit to the Court within
20 days a Local Rule 16.3 joint case management statement substantially complying with the form
provided in Appendix B to Local Rule 16.3.

     IT IS FURTHER ORDERED AND DECREED that all parties shall, within 20 days of
this order, make full and complete disclosures as provided for pursuant to FRCP Rule 26(a).

BY THE COURT:

_____
Yvette Kane, J.
United States District Court